IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA SHERRILL | ) | No. 06 C 4120 |
| Plaintiff, | ) | |
| | ) | The Honorable William J. Hibbler |
| v. | ) | |
| JOHN E. POTTER, Postmaster General, United States Postal Service, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On July 31, 2006, Sandra Sherrill sued her former employer—the United States Postal Service—alleging she was unlawfully fired. Sherrill claims she was the victim of discrimination and the Postal Service terminated her employment because she filed a complaint with the Equal Employment Opportunity Commission. The Postal Service moves for summary judgment and asserts Sherrill was fired because she physically threatened one of her a co-workers. For the reasons set forth below, the Postal Service's motion for summary judgment is GRANTED.

### I. Sherrill's Non-Compliance with the Local Rules

The operative facts in this Opinion will be taken from the Postal Service's Rule 56 statement. Local Rule 56 requires parties moving for summary judgment to file a "a statement of material facts as to which the moving party contends there is no genuine

1

issue and that entitle the moving party to a judgment as a matter of law ..." N.D. Ill. Loc. R. 56.1(a)(3). The party opposing summary judgment must respond to the moving party's statement of facts by setting forth all points of disagreement and stating any additional facts necessitating the denial of summary judgment. N.D. Ill. Loc. R. 56.1(b)(3). Finally, "all material facts set forth in the statement required by the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." N.D. Ill. Loc. R. 56.1(b)(3)(C). The Postal Service complied with its obligations and filed a statement of facts supported by citations to affidavits, witness reports, emails, job manuals and other documentation. Sherrill failed to respond. It should be noted that Sherrill is proceeding on a pro se basis. A pro se litigant, however, cannot completely disregard the Local Rules.

For example, in *Greer v. Board of Educ.*, the pro se plaintiff responded to the defendant's Rule 56 statement by circling the facts he contested and stating without further discussion the facts were "vague" or "not fully explained or stated." 267 F.3d 723, 727 (7th Cir. 2001). According to the Seventh Circuit, the plaintiff's response "miserably failed to comply with Local Rule 56.1" and the district court would have been "within its discretion to grant the Board's motion for summary judgment on this basis alone." *Id.* The court further explained:

> [The plaintiff] correctly notes that we liberally construe the pleadings of individuals who proceed pro se. The essence of liberal construction is to give a pro se plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable. However, a lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, and neither the appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes ...

*Id.*

2

Two years after *Greer*, the Seventh Circuit once again addressed the issue of non-compliance with Local Rule 56. In *Smith v. Lamz*, the pro se plaintiff only responded to two or three facts in the defendant's Rule 56 statement. 321 F.3d 680, 683 (7th Cir. 2003). Moreover, the plaintiff failed to support his contentions with citations to admissible evidence. *Id.* The Seventh Circuit found the plaintiff's response wholly unacceptable:

> A mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting materials...[The plaintiff's] summary judgment materials were woefully deficient in either responding adequately to the defendants' statement or in setting forth additional facts with appropriate citations to the record. As such...the district court did not abuse its discretion in deeming admitted and only considering the defendants' statement of material facts.

*Id.* Here, as in *Greer* and *Lamz*, Sherrill has not complied with the Local Rules. But unlike the plaintiffs in *Greer* and *Lamz*, Sherrill did not even attempt to respond to the moving party's statement of facts. Certainly, courts should construe pro se pleadings liberally to make sure their cases are not dismissed due to a mere technicality. The Court, however, can only assist litigants that—at the very least—try to follow the Local Rules. The assertions in the Postal Service's statement of facts are thus deemed uncontested and admitted. *See, e.g., Dauzvardis v. Midwest Generation, L.L.C.*, 2002 U.S. Dist. LEXIS 17562, No. 01 C 8549, 2002 WL 31017436, at *4 (N.D. Ill. Sept. 9, 2002)( "This Court deems all undisputed facts submitted by the moving party as admitted because the plaintiff failed to comply with Local Rule 56.1 ...")

## II.  Factual Background

A.  *Sherrill's Job Performance*

In 1998, Sandra Sherrill began her employment with the Postal Service as a mail processing clerk at the Processing and Distribution Center in Bedford Park, Illinois.

3

(Def. 56.1(a) St. ¶ 1.) One year into her employment, Sherrill was fired for having a verbal altercation with co-worker Cassandra Smith that included shouting obscenities and threatening physical violence. (Def. 56.1(a) St. ¶ 2.) Sherrill's supervisors, however, eventually reduced her punishment to a long-term suspension. (*Id.*) Despite this reprieve, Sherrill's job performance continued to fall short of the Postal Service's expectations. For example, in January of 2001, Sherrill was absent without permission on 19 separate days and missed a total of 96 hours of work. (Def's Ex. 5 at 8). In February of 2001, the Postal Service suspended Sherrill for her poor attendance record. (Def. 56.1(a) St. ¶ 3.) Sherrill's attendance woes continued, and in early 2003, she was formally reprimanded for missing approximately 224 hours of work between August 2002 and January 2003. (Def. 56.1(a) St. ¶ 5.) On September 16, 2003, Sherrill was suspended yet again for missing 75 hours of work between March 15, 2003, and August 28, 2003. (Def. 56.1(a) St. ¶ 6.)

B.  *Sherrill's EEOC Activity*

Approximately two months after her suspension, Sherrill sought pre-complaint counseling from the Equal Employment Opportunity Commission. On November 10, 2003, Sherrill told the EEOC she was the victim of sex and disability discrimination. (Def's Ex. 6 at 4) The crux of Sherrill's sex discrimination claim was that in 1999 she rebuffed the romantic advances of a supervisor, and in retaliation, he suspended her after she made threatening comments to co-worker Cassandra Smith. (*Id.*) Sherrill acknowledges the altercation, but says the incident was minor and she was only punished because she would not date her supervisor.

Sherrill's disability claims stem from an incident on October 14, 2003, when she had to have a conference with her supervisors following an altercation she had with a different co-worker, Lavonna Pumphrey. (*Id.*) Sherrill alleges her supervisors were biased during the meeting because they resented her for being medically restricted to light duty. (*Id.*) According to Sherrill, she has pins in her right foot and a "flat foot" deformity that causes pain and limping. (*Id.*) Sherrill also claims her supervisor (Charlesten Anderson) asked her to work beyond her light-duty restrictions and said too many people were on disability. (*Id.*)

C. *The Second Altercation with Cassandra Smith*

On the morning of December 2, 2003—approximately three weeks after Sherrill's pre-complaint to the EEOC— Sherrill was leaving work and saw co-workers Cassandra Smith and Dennis Pittman walking together in the parking lot. (Def. 56.1(a) St. ¶ 8.) As they parted ways, Smith told Pittman she would "see him later"; Sherrill—walking a few feet behind the pair—told Smith "no you won't." (Def. 56.1(a) St. ¶ 8.) For reasons unclear to the Court, Sherrill's remark led to both women shouting obscenities and threatening each other with physical harm.[1] (*Id.*) Smith eventually drove away and left the scene. Sherrill, however, refused to calm down. Sherrill got in her car and followed Smith to a nearby parking lot where she continued to yell and threaten Smith with physical violence. (Def. 56.1(a) St. ¶ 9.) After Sherrill left the parking lot, Smith returned to the post office and reported the incident to her supervisor Charlesten Anderson, as well as the Bedford Police Department. (Def. 56.1(a) St. ¶ 10.)

D. *The Decision to Fire Sherrill*

---

[1] The Postal Service argues Sherrill and Smith had romantic feelings for the same man. Sherrill denies the claim.

5

The next day, supervisor Anderson launched an investigation of the incident. (Def. 56.1(a) St. ¶ 15.) Anderson interviewed Pittman, Smith and Sherrill, as well as other employee witnesses. (Def. 56.1(a) St. ¶ 12-14). Two witnesses stated Smith tried to walk away from the confrontation, but Sherrill kept renewing the argument. (Def. Ex. 4 at 9, 13). Anderson concluded both women participated in the altercation, but Sherrill escalated events by following Smith around the parking lot and then driving after her when Smith tried to leave the premises. According to Anderson, Sherrill's behavior violated the Postal Service's "zero tolerance" policy regarding threatening co-workers with violence. (Def. 56.1(a) St. ¶ 15.) Anderson did not reach this conclusion by herself.

Anderson discussed potential courses of action with Matt Peri, the acting senior manager of distribution operation at the South Suburban Facility. (Def. 56.1(a) St. ¶ 17.) Peri's e-mail to Anderson states:

> You stated an employee made threatening comments to another employee while at work and then followed her and continued the remarks outside of work. This is a violation of the Postal Service Policy on Zero Tolerance for Violent behavior in the workplace as well as several [Employee Labor Manual] section[s] of conduct...I suggest that when the employee reports for duty tonight, she not be allowed to clock in, and she should be instructed that she is placed on emergency placement in off duty status ...

(Def. Ex. 5 at 16). Anderson also discussed the incident with two other supervisors (Douglas Ross and Charles Jean-Pierre) that concurred in the decision to discipline Sherrill. (Def. 56.1(a) St. ¶ 19.) On December 16 and 19, supervisors Anderson and Ross met with Sherrill regarding the incident; Sherrill's union representative was also present. (Def. 56.1(a) St. ¶ 22.) On December 23, 2003, Anderson and Ross issued a notice of removal informing Sherrill her employment was being terminated for

6

"unacceptable conduct as evidenced by your threat to do harm to a co-worker." (Def. 56.1(a) St. ¶ 23.)

E.  *Sherrill's Formal EEO Complaint*

On January 20, 2004, Sherrill signed a formal EEO complaint that included her termination as well as the allegations previously outlined in her November 2003 pre-complaint. (Def. 56.1(a) St. ¶ 25.) On May 5, 2006, the EEOC affirmed the Postal Service's agency decision, which held Sherrill was lawfully fired and no discrimination occurred. (Def. 56.1(a) St. ¶ 35.) On July 7, 2006, the EEOC denied Sherrill's request for reconsideration, and she filed this lawsuit on July 31, 2006. The Postal Service now moves for Summary Judgment.[2]

### III.  Standard of Review

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. *Celotex, 477 U.S. 324*. Once the

---

[2] On October 26, 2007, Sherrill also moved for summary judgment. Sherrill never notified the Postal Service she was moving for summary judgment and never scheduled a date for the motion to be heard. Moreover, Sherrill waited until April 2008 to call the opposing attorney and offer him a copy of the motion. It is axiomatic that litigants be given notice and opportunity to respond to charges of wrong doing. Here, Sherrill's actions fall woefully short of this fundamental requirement. Because Sherrill received, reviewed and responded to the Postal Service's motion for summary judgment, Sherrill's own motion for summary judgment—which adds nothing substantive and was not fully briefed—will be disregarded by the Court. *Cf. D'Amico v. Bldg. Material Local Union 786*, No. 02-C120, 2005 U.S. Dist. LEXIS 12506, *2 FN1, 2005 WL 483436 (N.D. Ill. March 1, 2005) ("Because plaintiffs did not serve Furio-Dugan with a copy of the motion for summary judgment, the motion for summary judgment is denied as to defendant Furio-Dugan.").

7

moving party has met the initial burden, the nonmoving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. v. Lake County*, Ill., 424 F.3d 659, 667 (7th Cir. 2005). The nonmoving party must produce specific facts showing there is a genuine issue of material fact and the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. 255.

## IV. Analysis

The essence of Sherrill's claim is that the Postal Service fired her because she filed a complaint with the Equal Employment Opportunity Commission. The factual record, however, demonstrates Sherrill was fired because she threatened a co-worker and had a history of poor attendance. Moreover, there is insufficient evidence to find that a triable issue exists as to whether Sherrill was the victim of sex and disability discrimination. Thus, the Postal Service's motion for summary judgment must be granted.

A.  *No Evidence of Disability Discrimination or Retaliation*

To prevail on a claim of discrimination, Sherrill must make her case using either the direct or indirect method of proof. *Jordan v. City of Gary*, 396 F.3d 825, 832-33 (7th Cir. 2005) (plaintiff with an "extensive track record of repeated and ongoing disciplinary problems" could not establish—under either method—that she was discriminatorily fired). Proving discrimination under the direct method requires "an admission by the decision maker that his actions were based on the prohibited animus." *Id.* at 832. The

8

Seventh Circuit recognized that plaintiffs have had little success in procuring such smoking gun evidence: "It should not be surprising that in today's politically correct workplace environment such admissions are rarely, if ever, made or encountered." *Id.* Therefore, plaintiffs can prevail under the direct method by "construing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decision maker." *Id.* Examples of circumstantial evidence include: suspicious timing, ambiguous statements and patterns demonstrating differing treatment of similarly situated employees. *Nichols v. Southern Ill. Univ.*, 510 F.3d 772, 782 (7th Cir. 2007) Plaintiffs can also proceed under the indirect method of proof which requires the plaintiff to demonstrate a *prima facie* case by establishing: (1) she engaged in statutorily protected activity; (2) she suffered an adverse action; and (3) there is a causal link between the protected activity and the adverse action. *Silk v. City of Chicago*, 194 F.3d 788, 799 (7th Cir. 1999).

No Postal employees admitted to discriminating against Sherrill because of her foot problems. Thus, the Court will analyze Sherrill's claims under the indirect method while also taking into account any circumstantial evidence in the record. Sherrill's disability discrimination claim stems from an argument she had with co-worker Lavonna Pumphrey on October 14, 2003. Following the argument, Sherrill and Pumphrey met with supervisor Anderson. Sherrill's EEO Investigative Affidavit states Sherrill took issue with Anderson's statements during the meeting: "[Supervisor] Anderson told me that the way I look at Lavonna could be considered harassment…[Supervisor] Anderson also told me that since I had been involved in a similar incident I was subject to termination." (Def. Ex. 1 at 11). Sherrill surmises Anderson took Pumphrey's side

because Sherrill had medical-related work restrictions and Anderson disliked employees that could not perform the customary duties of the job. (*Id.*) According to Sherrill, this meeting constitutes evidence of disability discrimination. This argument, however, suffers from a fatal flaw. Sherrill experienced no adverse action as a result of the meeting with Anderson.

An employee claiming discrimination and retaliation in violation of the American with Disabilities Act must show she suffered a materially adverse employment action.[3] *Silk v. City of Chicago*, 194 F.3d 788, 800 (7th Cir. 1999). For example, in *Silk*, the Chicago Police Department prohibited the plaintiff—a police officer with severe sleep apnea—from teaching night classes at Chicago State University while he was on light-duty restrictions. *Id.* at 795. The plaintiff claimed the policy was discriminatory because if he were not disabled he could have kept teaching. *Id.* The Seventh Circuit rejected this argument and held the plaintiff could not prove disability discrimination because there was no adverse employment action: "[the plaintiff] has shown no adverse action with respect to his actual police work: The [the plaintiff] was granted every accommodation and kept the same job at the same salary and at the same location." *Id.* at 801.

Here, as in *Silk*, Sherrill failed to point to any adverse action as a result of the argument with Pumphrey. The record shows Sherrill: (1) was not disciplined as a result of the altercation; (2) kept the same job at the same location; (3) had the same job

---

[3] The ADA defines "disability" as a physical or mental impairment that substantially limits one or more of an individual's major life activities. 42 U.S.C. § 12102(2). Sherrill has a "flat foot deformity" and her doctor recommended—and the Postal Service agreed—to place her on light duty restrictions. Sherrill claims her foot deformity causes her pain whenever she walks. Sherrill also has two pins in her right foot. The Postal Service argues "not every impairment that affects a major life activity [walking] will be considered disabling." (Mot. for Summary Judgment at 11). For the purposes of this motion, and in accord with the Court's obligation to view evidence in the light most favorable to the non-movant, the Court will assume Sherrill qualifies as disabled.

10

responsibilities and; (4) received the same salary before and after the meeting with Anderson. Next, Sherrill argues the Pumphrey incident influenced the Postal Service's decision to end her employment. The Court notes, however, Sherrill's termination letter stated she was being fired for: "unacceptable conduct as evidenced by your threat to do harm to a co-worker." (Def. Ex. 5 at 20) The letter also acknowledged:

> The following elements of your past record have been considered in arriving at this decision:
>
> You were issued a letter of Warning dated, February 2, 2003 for Failure to Maintain a Regular-Attendance Record.
>
> You were issued a Seven Day Suspension dated September 16, 2003 for Failure to Maintain a Regular Attendance Record.

*Id.* The record indicates Sherrill was fired because she physically threatened a co-worker and had history of poor attendance. Therefore, Sherrill suffered no adverse material action as a result of her meeting with Anderson and cannot establish a *prima facie* case of disability discrimination or retaliation. *See, e.g., Ajayi v. Aramark Bus. Servs. Inc.*, 336 F.3d 520, 531 (7th Cir. 2003) (finding an employer's unfulfilled threat of demotion did not constitute material harm, and thus there was no adverse action).

B.  *No Evidence of Sexual Harassment*

Title VII of the Civil Rights Act of 1964 prohibits sexual harassment in the workplace and discrimination because of an employee's sex. *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 78, 118 S.Ct. 998, L. Ed. 2d 201 (1998). Sherrill alleges she had a hostile work environment and was sexually harassed by two supervisors. To succeed on her claim, Sherrill must establish: (1) she was subject to unwelcome harassment; (2) the harassment was based on her sex; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create

a hostile or abusive atmosphere and; (4) there is a basis for employer liability. *Raciot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 677 (7th Cir. 2005). A hostile environment is a workplace "permeated with discriminatory intimidation, ridicule and insult." *Id.* at 677. When examining the offensiveness of a plaintiff's work environment courts should "consider all of the circumstances, including frequency and severity of the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interferes with an employee's work performance." *Id.*

The gravamen of Sherrill's hostile environment/harassment claim occurred in 1999. According to Sherrill, supervisor Michael Lee tried to date her, and when she refused, he suspended her for having an argument with a co-worker.[4] Sherrill also claims her refusal to date a different supervisor (Juan Jones) in 2000 caused problems at work and ultimately led to her termination. When the EEOC accepted Sherrill's complaint, it certified the applicable time period for Sherrill sexual harassment claims as November 14, 2003, to the end of her employment. (Def. Ex. 6 at 6.) The EEOC advised Sherrill that if she did not agree with the parameters of the investigation she should contact their offices. (*Id.*) Sherrill expressed no objections. (*Id.*)

In general, courts are prohibited from reviewing claims outside the applicable time frame of the EEOC complaint. *Dandy v. UPS*, 388 F.3d 263, 270 (7th Cir. 2004). Sherrill admits she experienced no romantic advances from her supervisors during the applicable time period. (Def. 56.1(a) St. ¶ 28.) The Postal Service argues this ends the inquiry. Courts, however, can consider events outside the scope of the EEOC complaint if those events are reasonably related to claims properly before the Court. *Id.* Sherrill argues she lost her job in part because she rebuffed the romantic advances of her

---

[4] Sherrill acknowledges the incident but claims she should not have been disciplined.

supervisors. Therefore, Sherrill asks the Court to examine the alleged actions of Jones and Lee even though they are outside the parameters of the EEOC complaint.

Sherrill claims supervisors Lee and Jones made inappropriate comments while trying to gain her affections. For example, Sherrill claims when Lee discovered she spent personal time with co-worker Marcus Fields, Lee came over to Fields' desk and said—within earshot of other employees—"What's so special about you? How come you get it?" (Def. Ex 1 at 4.) Sherrill alleges supervisors Jones and Lee made similar comments on other occasions and also attempted to get her home phone number. Approximately three and a half years later, the Postal Service terminated Sherrill's employment. The Postal Service contends—and after examining the record, the Court agrees—Sherrill was fired because she threatened a co-worker and had a history of poor attendance. The decision to fire Sherrill was made by supervisor Anderson in consultation with Matt Peri, Douglas Ross and Charles Jean-Pierre. The record does not suggest Lee or Jones played a role in Sherrill's final evaluation. It bears repeating, the stated reason for Sherrill's termination was "unacceptable conduct as evidenced by [Sherrill's] threat to do harm to a co-worker." Her termination letter stated:

> The following elements of your past record have been considered in arriving at this decision:
>
> You were issued a letter of Warning dated, February 2, 2003 for Failure to Maintain a Regular-Attendance Record.
>
> You were issued a Seven Day Suspension dated September 16, 2003 for Failure to Maintain a Regular Attendance Record.

(Def. Ex. 5 at 20.) The Court finds the alleged actions of Sherrill's supervisors did not contribute to her termination. Consequently, the Court declines to consider any evidence beyond the scope of the operative dates of Sherrill's EEO complaint. Sherrill admitted

13

she experienced no romantic advances during the operative time period, and thus her claim cannot withstand the Postal Service's motion for summary judgment.

C. *No Evidence of Retaliation*

The Postal Service has articulated a clear and cogent reason for Sherrill's termination. Sherrill has no direct evidence the Postal Service fired her because she filed an EEO complaint. To withstand summary judgment, Sherrill must show the stated reasons for her termination were pretextual. *McCoy v. Maytag Corp.* 495 F.3d 515, 523 (7th Cir. 2007) (defining pretext as a "lie, specifically a phony reason for some action."). Sherrill's most compelling circumstantial evidence is that she was fired less than two months after she sought counseling from the EEOC. But, in order to successfully prove pretext, Sherrill must first demonstrate she was meeting the Postal Service's legitimate business expectations. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 666 (7th Cir. 2006).

Sherrill admits she was suspended in 1999 for a disciplinary infraction. Sherrill admits she was suspended twice for missing too many days of work without permission. Sherrill admits she yelled obscenities and threatened Cassandra Smith on December 2, 2003. Sherrill admits she followed Smith off the Postal facilities with the expectation of engaging in a fight. The Postal Service argues Sherrill's multiple suspensions and history of unauthorized absences prove she was not meeting their legitimate business expectations; the Court agrees. *See, e.g., Gates v. Caterpillar Inc.*, 513 F.3d 680, 690 (7th Cir. 2008)(granting summary judgment where fired employee was suspended multiple times for disciplinary infractions and thus was not meeting employer's legitimate expectations); *Nowak v. Transportation Joint Agreement*, 255 Fed. Appx. 85,

14

87 (7th Cir. 2007)(granting summary judgment where fired employee was "belligerent and argumentative" during a training session and thus not "performing up to employer's legitimate expectorations."); *Tomanovich*, 457 F.3d at 666 (granting summary judgment where fired employee refused to attend multiple meetings and thus was "insubordinate" and not meeting employer's legitimate expectations).

### V. CONCLUSION

The factual record does not indicate that the Postal Service's stated reason for firing Sherrill was fabricated. Moreover, the record does not support a finding that Sherrill was subjected to discriminatory treatment because of her sex or her alleged disability. Absent such evidence, the Postal Service's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

8/25/08
Dated

The Honorable William J. Hibbler
United States District Court