IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA SHERRILL | ) | No. 06 C 4120 |
| | ) | |
| Plaintiff, | ) | |
| | ) | The Honorable William J. Hibbler |
| v. | ) | |
| | ) | |
| JOHN E. POTTER, Postmaster General, United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On July 31, 2006, Sandra Sherrill sued her former employer—the United States Postal Service—alleging she was unlawfully fired. On August 25, 2008, this Court granted the Postal Service's motion for summary judgment on all of Sherrill's retaliation and discrimination claims. Now, Sherrill has filed a motion to vacate the Court's ruling. For the reasons set forth below, the motion is DENIED.

### I. The Grant of Summary Judgment

Sandra Sherrill was a postal service employee from 1998 until she was fired on December 23, 2003. Sherrill then sued the postal service for wrongful termination. The essence of Sherrill's claim was that she was fired in retaliation for filing a complaint with the Equal Employment Opportunity Commission. The Postal Service argued—and the

1

Court agreed—that Sherrill was fired because she had a history of poor attendance[1] and had instigated a verbal altercation with a co-worker whom she later threatened with physical violence. A full recounting of the facts and the Court's reasoning can be found at *Sherrill v. Potter*, No. 06 C 4120, 2008 U.S. Dist. LEXIS 75965 (N.D. Ill. Aug. 25, 2008).

## II. Standard of Review

Sherrill has filed a motion to vacate the Court's ruling pursuant to Federal Rules of Civil Procedure 59 and 60. The purpose of Rule 59 is to direct the court's attention to "newly discovered material evidence or a manifest error of law or fact, and enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). Similarly, Rule 60 allows courts to "relieve a party from an order on the grounds of mistake, inadvertence, excusable neglect, newly discovered evidence, fraud or any other reason justifying relief from the operation of the judgment. *McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000) (internal quotations omitted). Relief under Rule 60 is "an extraordinary remedy and is granted only in exceptional circumstances." *Id.* quoting *Dickerson v. Board of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1116 (7th Cir. 1994) (internal citation omitted). Finally, motions to vacate should not be used to simply rehash old arguments. *See, e.g., Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.").

---

[1] For example, the Postal Service suspended Sherrill in September of 2003 because she missed 75 hours of work between March 15, 2003, and August 28, 2003. *Sherrill*, 2008 U.S. Dist. LEXIS 75965, at *6.

2

### III. The Motion to Vacate

Sherrill's motion for reconsideration raises two issues, one procedural and one substantive. First, Sherrill contends the Court committed a procedural error by treating the summary judgment motion filed by the Postal Service as the operative brief in this case. Sherrill's claim stems from the fact that she filed her own summary judgment motion and believes it should be "counted." Faced with two summary judgment motions, the Court analyzed the motion by the Postal Service because it was properly filed, fully briefed, and complied with the Federal and Local Rules. By contrast, Sherrill's motion was never fully briefed and was not in complete compliance with the Local Rules. This was mainly because Sherrill failed to send a copy of her brief to the Postal Service when she filed the motion. Compounding the problem, Sherrill waited approximately 6 months before she called the Postal Service to tell them she moved for summary judgment and could send them a copy of her brief.[2]

Sherrill filed a response opposing the Postal Service's motion for summary judgment. Additionally, in an abundance of caution, the Court reviewed Sherrill's summary judgment motion but decided it would not substantively change the outcome of the case. Therefore, the Court was aware of Sherrill's positions and arguments in favor of her case. In her motion, Sherrill claims "fairness dictates that Sherrill's motion for summary judgment should (at the very least) be treated as a statement of additional facts which warrant denial of [the Postal Service's] summary judgment motion." (Suppl. To Pl. Mot. to Vacate Summary Judgment at 3.). The Court disagrees. Even accepting the strongest arguments in her summary judgment motion would not alter the Court's ruling.

---

[2] Sherrill did not file her brief electronically. Therefore, it could not be downloaded from the Court's docketing system (PACER).

3

Indeed, counsel for Sherrill acknowledges that the procedural wrangling is irrelevant "if Sherrill's case had no merit."

Turning to the merits of Sherrill's claim, her main argument is as follows: When a plaintiff is fired shortly after complaining about discrimination, there is an issue of fact as to whether the plaintiff was the victim of retaliation. (Suppl. To Pl. Mot. to Vacate Summary Judgment at 4.). In this case, Sherrill complained to the EEOC on November 10, 2003, and was fired approximately one month later. Sherrill is correct; suspicious timing can support a finding of retaliatory discharge. *See, e.g., Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 793 (7th Cir. 2007) ("[t]he causal link of a retaliation claim is frequently established by showing that there was a suspiciously short period of time between the employee's complaint and the adverse employment action."). Working from this principle, Sherrill relies heavily on the Seventh Circuit's ruling in *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, (7th Cir. 2007). This reliance is misplaced. In *Pantoja*, the court held that the plaintiff sufficiently raised the inference of retaliation when he was fired the *day after* his managers learned he complained to the EEOC. *Id.* at 850. The court noted that even though the plaintiff was not a "perfect employee" and had been previously disciplined, a rational jury could find he was fired because of his complaints of discrimination. *Id.* at 843.

According to Sherrill, her case is similar to *Pantoja* because she also had a poor performance record and was fired shortly after complaining to the EEOC. There is an important distinction, however, that Sherrill has failed to mention: A key event took place *after* her complaint to the EEOC and *before* her dismissal from the Postal Service. Namely, on December 2, 2003, Sherrill *threatened to attack a co-worker*—Cassandra

4

Smith—while they were on Postal Service property. Sherrill then escalated the altercation by following Smith off the premises and continuing to threaten her. The next day, the Postal Service launched an official investigation into the incident, and conducted interviews with the witnesses and the participants of the altercation. Sherrill's manager discussed the incident with two other supervisors who both agreed that Sherrill needed to be disciplined. Sherrill was eventually given an official notice of removal due to "unacceptable conduct as evidenced by [her] threat to do harm to a co-worker."

In the Court's view, a rational jury would have no choice but to find that Sherrill was fired because she violated the Postal Service's "Zero Tolerance" policy regarding assaulting fellow employees. Sherrill counters that one of her managers told her she filed "too many EEOC complaints" and when "Sherrill refused to back down on her statutorily protected right to file claims, it was only then that she was fired." (Suppl. To Pl. Mot. to Vacate Summary Judgment at 4.). Even if Sherrill is accurately quoting her managers, this argument misses the mark. It was only after Sherrill *threatened one of her co-workers with physical violence* that she was fired. Astoundingly, Sherrill insists on sweeping this event under the rug. Refusing to acknowledge the altercation, however, does not mean it did not occur.

Finally, Sherrill argues that because the Postal Service took into account her poor job record when they terminated her employment, it is evidence that they were really just retaliating against her for complaining to the EEOC. In particular, Sherrill argues the Postal Service had previously "tolerated years of allegedly poor performance (i.e., not showing up to work for extended periods of time, fighting, etc.)." According to Sherrill, this is proof that, but for her complaint to the EEOC, she would still be employed by the

United States Postal Service. In other words, the Postal Service would have kept her as an employee—despite the altercations and poor attendance record—if she would have dropped her complaint with the EEOC. (Suppl. To Pl. Mot. to Vacate Summary Judgment at 4.). This argument borders on the frivolous. Sherrill does not dispute that she had previously been suspended—twice—for unauthorized absences. Nor does Sherrill dispute that she threatened to fight one of her co-workers on Postal property. Thus, Sherrill is asking the Court to hold that once an employer gives a worker a second chance, the employer must be willing to dole out third, fourth and fifth chances as well. This, the Court will not do.

### IV. Conclusion

At some point, employers must be free to rid themselves of employees that are failing to meet legitimate job expectations. The Postal Service reached that point following Sherrill's final and most severe transgression. There is no evidence to suggest otherwise. Accordingly, Sherrill's motion for reconsideration and to vacate the Court's entry of summary judgment is DENIED.[3]

IT IS SO ORDERED.

12/9/08
Dated

The Honorable William J. Hibbler
United States District Court

---

[3] The Court thanks Mr. David J. Fish of the Fish Law Firm, P.C. for serving as Sandra Sherrill's appointed counsel.

6